UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| NATIONAL SURETY CORPORATION,<br><br>　　　Plaintiff,<br><br>　v.<br><br>GEORGIA POWER COMPANY,<br><br>　　　Defendant. | CIVIL ACTION NO.<br>2:17-CV-68-RWS |

# **O R D E R**

This case is before the Court on Plaintiff's Partial Motion for Summary Judgment [81] and Motion in Limine to Exclude Testimony of Defense Expert C. Michael Dickinson [80], as well as Defendant's Motion for Summary Judgment [83] and Motions to Exclude Reports and Testimony of Plaintiff's Experts Edward Brill [84] and J. Michael Hawkins [85]. After reviewing the record and considering parties' arguments at oral argument on August 26, 2019, the Court enters the following Order.

## Background

This is a subrogation action to determine Georgia Power's liability for the March 17, 2015 fire at Brandreth Farms in Talking Rock, Georgia. The facts are largely undisputed.

On March 16, 2015, Georgia Power's employees worked on electrical equipment housed in the barn. The following morning around 7:00 a.m. Brandreth woke up to his dogs barking and walked outside to check on them. From his carport, he saw the fire and a "white light" like an "electrical arc" emanating from the wash rack at the barn, which was approximately a "football field and a half" away. (Def.'s SMF, Dkt. [83-7] at ¶¶ 10-11; Deposition of John Brandreth, Dkt. [83-4] at 13:6-11, 52:10-13.) Brandreth ran to the barn to save his horses. When he arrived, the barn was clear, but as he tried to get the horses out, he saw the fire moving fast around the open back wall and into the aisle. Brandreth exited safely, but the fire destroyed the barn and the horses in it. It also largely destroyed the nearby arena.

Plaintiff National Surety Corporation insured the property against fire damage and, pursuant to its policy, indemnified Brandreth Farms for losses arising from the fire, amounting to $742,131.39. Plaintiff also hired fire investigator Michael Hawkins to investigate the fire's origin and cause, which was conducted

on April 2015. Hawkins determined the fire originated on the left, rear exterior of the barn where the electrical meter base and electrical service entrance was located.

National Surety initiated this action on February 1, 2017, alleging Georgia Power's negligent work on the barn's electrical service equipment caused the fire. Georgia Power moved to dismiss the claim, which the Court denied [24], and then Answered Plaintiff's Complaint with thirteen affirmative defenses. Plaintiff now moves for partial summary judgment on eight of them, as well as to exclude the testimony of Defendant's expert, Michael Dickinson. Defendant moves for summary judgment and to exclude the expert testimony of Hawkins and Edward Brill. The Court will consider each argument in turn, after first setting out the applicable standards of review.

## Discussion

**I. Standards of Review**

    a. <u>Summary Judgment</u>

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

  b. Admissibility of Expert Evidence

Federal Rule of Evidence 702 governs the admissibility of proposed expert evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case

The trial court, as the gate-keeper, must determine that the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a

factual dispute." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 591 (1993) (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)). The trial court must also "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. Ltd. v. Carmichel, 526 U.S. 137, 152 (1999).

The Eleventh Circuit has synthesized the existing rules into a three-part inquiry, instructing courts to consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 562 (11th Cir. 1998), reh'g and reh'g en banc denied, 172 F.3d 884 (1999). It is important to note that "expert testimony that does not meet all or most of the Daubert factors may sometimes be admissible." U.S. v. Brown, 415 F.3d 1257, 1268 (11th Cir. 2005). "For nonscientific expert testimony, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.' A district court may decide that nonscientific expert

testimony is reliable based 'upon personal knowledge or experience.'" Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331, 1338 (11th Cir. 2009) (quoting Kumho Tire Co., 526 U.S. at 150, 152).

**II. Analysis**

    a. Plaintiff's Motion for Summary Judgment [81]

Plaintiff moves for summary judgment on eight of Defendant's affirmative defenses. In Response [90], Defendant withdraws all challenged affirmative defenses but the eleventh. Defendant's eleventh affirmative defense maintains that Plaintiff failed to mitigate damages by electing not to salvage the remaining arena.[1] Plaintiff argues Defendant has not met its evidentiary burden on this issue.

As the moving party, Plaintiff has the burden of demonstrating there is no genuine dispute as to any material fact and that it did not fail to mitigate damages as a matter of law. See Hickson 357 F.3d at 1259. Defendant contends that there is a genuine issue of material fact as to whether Plaintiff failed to mitigate its damages based solely upon Defendant's expert, Daniel Sheehan's, testimony that the fire did not destroy the entire arena and that "economically, it would have made sense" to try and salvage the southern portion. (Sheehan Dep., Dkt. [90-4] at

---

[1] By not addressing the issue in its Response [90], Defendant appears to concede that no evidence has been presented in support of its earlier allegation that Brandreth Farms failed to equip its horse barn with smoke detectors and alarms.

7

48:22-49:13.)  While Plaintiff maintains the entire arena was beyond repair, it argues that is immaterial because Defendant has not presented evidence that salvaging the remaining arena was more economical than Plaintiff's decision to build a new arena.  The Court agrees.

Georgia's mitigation rule is set forth in O.C.G.A. § 51-12-11, which states that: "[w]hen a person is injured by the negligence of another, he must mitigate his damages as far as is practicable by the use of ordinary care and diligence." O.C.G.A. § 51-12-11.  See also DeVooght v. Hobbs, 593 S.E.2d 868, 873 (Ga. Ct. App. 2004) (applying the mitigation rule).  That said, "[t]he burden is upon the party asserting that the opposite party could have lessened his damages, and such proof must include sufficient data to allow the jury to reasonably estimate how much the damages could have been mitigated."  Georgia Farm Bureau Mut. Ins. Co. v. Turpin, 668 S.E.2d 518, 521 (Ga. Ct. App. 2008) (internal citation omitted). Defendant has not met that burden.

Sheehan's opinions on the issue are largely unhelpful because his expert testimony is based on his role as a structural engineer who does not do cost analysis.  (Id. at 49:14-50:1 ("I did not do a cost analysis."))  His written report reflects the limited scope of his analysis because he does not comment on the economic repercussions of repair versus rebuilding.  (Sheehan Expert Report, Dkt.

[90-1].) It is a stretch to find his report helpful beyond arguing that a portion of the arena was not destroyed. However, even considering Sheehan's statements in his deposition regarding mitigation, Defendant still has not presented evidence that would allow a reasonable jury to estimate how much the damages could have been mitigated. Sheehan himself acknowledged that "even if a portion of the building is salvageable, it may be more cost effective to simply raze it and build a new one." (Sheehan Dep., Dkt. [90-4] at 48:16-19.) Further, he opined that "economically, it would have made sense [to salvage the arena], *but you have to get the numbers put together*." (Sheehan Dep., Dkt. [90-4] at 49:5-6.) Defendant appears to have omitted the second part of the sentence. Further, Defendant has not presented any numerical evidence—or even an unqualified opinion—that the arena should not have been rebuilt. Thus, Plaintiff's Partial Motion for Summary Judgment is **GRANTED**.

    b. Plaintiff's Motion to Exclude [80]

Plaintiff moves to exclude the opinion testimony of Defendant's expert witness, Michael Dickinson. Dickinson's qualifications and methodology go unchallenged. See City of Tuscaloosa, 158 F.3d at 564–65. Instead, Plaintiff argues his testimony would not assist the trier of fact. Id. Defendant argues Dickinson's opinions are helpful to the jury for two reasons, first to aid in

determining a fact at issue and second to understand the evidence by determining the credibility of witnesses' statements.

Admissible expert testimony must "assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Id. Here, the Court finds that Dickinson's opinions regarding the visibility of the electric meter would not help the trier of fact understand the evidence or determine a fact at issue.

Dickinson is a sightline analyst who used a 3D scanner to reconstruct the burned structures and terrain between the main residence and the barn, creating a model of the area at the time of the fire. Based on these findings, Dickinson drew three conclusions: 1) The meter was not visible from the carport; 2) the meter was not visible from the house, and; 3) the meter was not visible from the porch. Yet, these conclusions are unhelpful to Defendant because Plaintiff does not allege anyone saw the meter the morning of the fire. In fact, Brandreth testified at his deposition that he could not see the power meter from his house. While there is some disagreement over Brandreth's statements about seeing the meter right after the fire, his testimony is that he did not—and could not—see the meter when he first noticed the fire from his carport. Thus, despite Defendant's argument that Dickinson's opinions "are helpful to the [sic] aid the jury in determining a fact at

issue, specifically whether the meter was visible at the time of the fire from the main residence," there is no "fact at issue" for Dickinson to help determine.[2]

Defendant also argues Dickinson's testimony would help the average juror determine the distance from the barn to the house. Again, the distance from the barn to the house is not a disputed fact. Brandreth testified the distance was about a "football field and a half," which is 540 feet. Dickinson's analysis concludes the distance from the house to the wash rack was between 523 and 562 feet. Further, Defendant does not identify why exactly that distance is important, much less why an exact distance is important. It could be helpful in determining if Brandreth could see the meter, but Brandreth testified he did not see the meter, rendering the issue moot. The Court finds similar issue with Defendant's argument regarding elevations.

Defendant next argues Dickinson's testimony helps to discredit Plaintiff's origin expert, Hawkins', testimony because Hawkins based his report on the understanding that Brandreth could see the meter. The Court acknowledges—as does Hawkins himself—this inconsistency in his report. That said, Dickinson's

---

[2] The parties both address cumulative evidence under Federal Rule of Evidence 403. Defendant correctly notes the issue is a premature evidence-based objection. That said, if the Dickinson's testimony were permitted under <u>Daubert</u>, the Court would likely find it cumulative.

testimony does not aid Defendant's discrediting of Hawkins beyond Brandreth's own testimony.

The remainder of Defendant's arguments appear to go to Brandreth's testimony that he saw electrical arcing coming from the area where the meter was located. While the Court understands Defendant's concerns regarding Brandreth's credibility, Dickinson does not opine on Brandreth's ability to see arcing. Dickinson merely confirms Brandreth's testimony that he did not see the meter and that the barn was about a "football field away." Any additional testimony from Dickinson would be outside the scope of his expert report.

Thus, while Dickinson's reconstructive models may be admissible, the Court finds Dickinson's opinion testimony unhelpful to the jury because it would not help the trier of fact understand the evidence or determine a fact at issue. Dickinson's opinion testimony is therefore excluded, and Plaintiff's Motion to Exclude is **GRANTED**.

c. Defendant's Motions [83, 84, 85]

Defendant moves for summary judgment on Plaintiff's negligence claim, arguing Plaintiff has not met its evidentiary burden on causation. Specifically, Defendant argues Plaintiff's origin and causation experts should not be permitted to offer their opinions under Daubert and, without both of them, Plaintiff cannot

prove causation. Thus, while Defendant filed three separate motions, the Court considers them cumulatively to determine whether Plaintiff has presented enough evidence to support causation, a necessary element of its negligence claim.

To demonstrate causation, "[a] plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough." AMLI Residential Properties, Inc. v. Georgia Power Co., 667 S.E.2d 150, 156 (Ga. Ct. App. 2008) (citing Purvis v. Steve, 643 S.E.2d 380 (Ga. Ct. App. 2007)). Here, Plaintiff relies solely upon testimony from Michael Hawkins, an origin expert, and Edward Brill, a causation expert. Defendant moves to exclude the opinion testimony of both experts, challenging their reliability and usefulness to the jury. The Court, however, finds Brill's testimony necessary to carry Plaintiff's evidentiary burden on causation and focuses its analysis accordingly.[3]

Plaintiff has identified Brill as an expert witness to opine on causation. Under the Eleventh Circuit's expert test, Plaintiff has the burden of establishing his

---

[3] While Defendant raises many objections to Hawkins' opinion testimony on the origin of the fire, the Court need not address them because it finds that Brill's testimony is excluded and without Brill's testimony, Plaintiff has not presented sufficient evidence on causation.

qualification, reliability, and helpfulness, as the proponent of the expert opinion. See Chapman v. Procter & Gamble Distrib., LLC, 766 F.3d 1296, 1304 (11th Cir. 2014). Brill's qualifications are undisputed, but Defendant challenges the reliability and helpfulness of his testimony. Specifically, Defendant takes issue with Brill's opinion that "the probable cause of the fire is due to an electrical malfunction at the Georgia Power electric meter that was damaged when the meter was removed and reinstalled multiple times by Georgia Power prior to the fire." (Brill Report, Dkt [84-2] at 1, 19.) According to Defendant, the opinion is unreliable because it is speculative and is too big a leap to cover the gap between the physical evidence available and Brill's conclusion and therefore would not assist the trier of fact in understanding the evidence. The Court agrees.

Analysis of the reliability of an expert's methodology generally begins with the four factors provided by the Daubert Court.[4] Here, Defendant does not question Brill's methodology in the manner contemplated by Daubert but instead focuses on the amount and quality of data available relative to the conclusions Brill drew. Contra Daubert, 509 U.S. at 595 (recognizing a trial judge "should

---

[4] "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community." Chapman, 766 F.3d at 1305 (citing Daubert, 509 U.S. at 593–94).

meticulously focus on the expert's principles and methodology, and not on the conclusions that they generate"). Defendant's argument is sound because "conclusions and methodology are not entirely distinct from one another; neither Daubert nor Federal Rule of Evidence 702 requires a trial judge to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." Chapman, 766 F. 3d at 1305 (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (internal citations omitted). Instead, the judge "is free to conclude that there is simply too great an analytical gap between the data and the opinion proffered." Id. at 1305-6.

Defendant challenges the reliability of Brill's opinions in three ways: 1) Brill did not rely on sufficient facts and data; 2) Brill could not rule out alternative causes; and 3) Brill's theory of causation rests on critical assumptions he did not support with data. (Def.'s Mot. to Exclude, Dkt. [84-1] at 8.) In Response, Plaintiff stands by Brill's data but does not elaborate much on Brill's lack of alternative causes, which is the heart of the Court's issue with Brill's testimony.

Causation turns on Brill's opinion that there was arcing in the meter, indicating a malfunction.[5] While Defendant challenges Brill's arc analysis under

---

[5] For the purposes of this Order, the Court will consider Brill's Supplemental Report. (Def.'s Mot. to Exclude Brill, Dkt [84-4].)

NFPA 921, even assuming the analysis was proper under NFPA 921 it does not support his conclusion that the arcing proves the meter malfunctioned. As Brill concedes, arcing in the meter does not rule out the possibility that the arcing was the result of the meter being attacked by the fire. (Brill Dep., Dkt [84-3] at 96:22-97:3.) More specifically, because one of the connections from the meter "wasn't recovered from the scene, [Brill] wasn't able to determine if it was potentially damaged or the source of the original failure." (Id. at 135:6-136:6; 89:7-13.)

Unfortunately for the Plaintiff, little evidence survived this fire. It appears that Brill adequately surveyed the evidence available to him, but he himself acknowledged repeatedly the scarcity of evidence for him to evaluate. For example, Brill could not rule out other possible ignition sources or whether the meter was actually damaged when it was removed or reinstalled, much less which part of the meter was damaged as a result.[6] As the gatekeeper, it is the Court's job to ensure situations with such little evidence do not lead to final expert conclusions based on speculation. See Daubert, 509 U.S. at 591.

Thus, the Court finds that Brill did not bridge the gap between the data and the opinion proffered. The data indicates that there was arcing in the meter and

---

[6] See page 9 of Defendant's Motion of Exclude Brill's Testimony [84] for quotes from Brill's deposition acknowledging the lack of evidence.

that the work done by Defendant the days before likely involved removing and reinstalling the meter. As discussed above, neither of those facts lead to the conclusion that Defendant's work damaged the meter, or that the meter malfunctioned and caused the fire. Further, without such testimony from Brill, Plaintiff cannot carry its burden on causation. See, e.g., Cont'l Cas. Co. v. Peterson Pac. Corp., No. 2:08-CV-0240-WCO, 2010 WL 11459834, at *7 (N.D. Ga. May 21, 2010) (O' Kelley, J.) (granting summary judgment because "plaintiff's expert will not be permitted to testify as to the cause and origin of the fire. Plaintiff has presented no other evidence to prove the causation element of its negligence claim.")

All the same, Plaintiff urges the Court to consider the doctrine of *res ipsa loquitur*. If *res ipsa loquitur* applied, it would "fill[ ] the evidentiary gap" discussed above and allow Plaintiff to reach a jury despite the lack of "evidence of consequence showing negligence on the part of" Defendant. Kmart Corp. v. Larsen, 522 S.E.2d 763, 765 (Ga. Ct. App.1999). Translated, *res ipsa loquitur* means "the transaction speaks for itself." Parker v. Dailey, 177 S.E.2d 44, 46 (Ga.1970). As a rule of evidence, "[t]he doctrine authorizes, but does not require, the jury to infer facts from the circumstances in which the injury occurred." Kmart Corp., 522 S.E.2d at 765.

The Court does not find this argument applicable in this case because the elements are not satisfied. *Res ipsa loquitur* requires that: (1) the injury is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) the injury was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the injury must not have been due to any voluntary action or contribution on the part of the plaintiff. Id. The first and second elements are clearly not met in the present case—a product failure can occur absent negligence and the meter was not in the exclusive control of the Defendant. Thus, absent Brill's opinion testimony, mere speculation links Defendant to the barn fire, and no reasonable jury could find in Plaintiff's favor.

Defendant's Motion to Exclude Brill [84] and Motion for Summary Judgment [83] are therefore **GRANTED**. Their Motion to Exclude Hawkins [85] is **DENIED as moot**.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment [81] and Motion to Exclude Dickinson [80] are **GRANTED**. Defendant's Motion for Summary Judgment [83] and Motion to Exclude Brill [84] are also **GRANTED**. Defendant's Motion to Exclude Hawkins [85] is **DENIED** as moot. The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 12th day of September, 2019.

_____
**RICHARD W. STORY**
United States District Judge